Everett E. & Barbara
**JENSEN, Appellants,**

v.

**Thelma F. BORTON, Respondent.**

No. WD 38924.

Missouri Court of Appeals,
Western District.

July 28, 1987.

Rehearing Denied Sept. 1, 1987.

Thomas H. Farnum of Armitage & Farnum, P.C., Kansas City, for appellants.

Patrick Beeman and Dennis C. Eckold of Norton, Pollard & Norton, Inc., Kansas City, for respondent.

Before KENNEDY, C.J., and MANFORD & LOWENSTEIN, JJ.

MANFORD, Judge.

This is a civil action, initiated by appellants, seeking specific performance of a contract for the purchase and sale of real estate and seeking damages for breach of contract. The cause was tried to the court, which issued its judgment for respondent on both counts of appellants' petition. It is from this judgment that appellants appeal.

The pertinent facts are as follows:

On May 14, 1985, Barbara and Everett Jensen (appellants and hereinafter "buyers") entered into an agreement with Thelma Borton (respondent and hereinafter "seller") for the purchase and sale of some twenty acres of land and two houses located in Smithville, Missouri. The contract provided that the purchase price was $75,-000.00, including $500.00 earnest money deposited by the buyers with ERA Martin House Realty, which had agreed to list seller's property from May 6, 1985, until November 6, 1985. A down payment of

$24,500.00 was to be made at closing on June 3, 1985, and seller was to finance the remaining $50,000.00 for fifteen years at nine and one-half percent interest. Buyers' note for $50,000.00 was to be secured by a first deed of trust. The contract did not contain a "time is of the essence" provision. The contract contained the following provision:

> When accepted by Seller, this shall constitute a legally binding contract. However, a standard real estate contract may hereafter be made in conformity hereto. In the absence of the execution of the standard contract, then this Agreement shall be binding on all parties and this transaction shall be consummated to the terms and conditions provided herein.

Other provisions contained in the contract will be set forth *infra* when pertinent to disposition of the points on appeal.

The parties testified that when they signed the contract they were of the opinion that it represented the full agreement between the parties, but they understood that other documents would need to be executed to complete the transaction.

On May 23 or 24, 1985, Tom Fotovich, seller's real estate agent, delivered to buyers a long form real estate contract with a seller carry back rider and real estate tax reassessment disclosure which he had prepared, and a first deed of trust and promissory note drafted by Harrison Norton, seller's attorney.

Buyers objected to these additional documents on the grounds that they contained provisions which were not contained in the May 14th contract. On May 30, 1985, Mrs. Jensen (buyer) took these documents to her attorney, Captain James Slemboski. While Mrs. Jensen was in Slemboski's office, Slemboski used a conference telephone to call Fotovich. As Slemboski and Fotovich conversed, Mrs. Jensen overheard both sides of the conversation. Mrs. Jensen testified that Slemboski asked Fotovich if the closing date could be extended to June 14, 1985, and that Fotovich responded, "no problem"; that Slemboski informed Fotovich that he (Slemboski) had advised buyers not to execute the long form real estate contract or deed of trust; and that Fotovich did not tell Slemboski that buyers would be required to pay seller the $24,500.00 down payment on June 3, 1985, or where the closing would be held.

Fotovich testified that he did receive a phone call from Slemboski on May 30, 1985, concerning the real estate transaction; that Slemboski stated that buyers wanted to extend the closing date but that he did not agree to extend the closing to June 14, 1985; and that Slemboski said that buyers had some questions about the additional documents. Fotovich testified that he discussed with seller the possibility of extending the closing date.

Sometime after her meeting with Slemboski, Mrs. Jensen arranged to meet Fotovich at seller's property at 6:00 p.m. on June 3, 1985, with buyers' contractor so that the contractor could inspect one of the houses on the property. Fotovich suggested that after the contractor left, he and the parties could get together to discuss the unresolved issues.

Buyers, seller, and Fotovich did meet that evening from about 6:30 until 10:00 p.m. They discussed buyers' specific objections to the long term real estate contract, the deed of trust, and the seller carry back rider. During that meeting, neither Fotovich nor seller asked buyers for the $24,500.00 down payment, and buyers did not offer the down payment to seller or Fotovich. Neither Fotovich nor seller informed buyers that it was time to close or that the May 14th contract had expired. There was no evidence that seller or Fotovich prepared or delivered a warranty deed to buyers on or before June 3, 1985.

During the June 3rd meeting, the parties agreed to see if they could resolve the disputed matters by writing an addenda to the contract. As a result of these discussions, Fotovich prepared an "Addenda to Real Estate Agreement" and a revised seller carry back rider. The addenda stated that the closing date would be extended until June 14th. Fotovich delivered these new documents to buyers on June 5, 1985. These documents were signed by seller but were never signed by buyers.

On that same day, Fotovich received a telephone call from a Mr. and Mrs. Robert Keck who inquired of Fotovich if seller's property was still for sale. Fotovich informed the Kecks that the contracts with buyers were "up in the air", and that the contract had expired a couple of days ago.

On June 6, 1985, Mrs. Jensen took the addenda and revised seller carry back rider to Slemboski. Mrs. Jensen again overheard a conference call Slemboski placed to Fotovich. When Slemboski informed Fotovich that buyers still had objections to the new documents, Fotovich told Slemboski to contact seller's attorney, and gave Slemboski Norton's telephone number.

On June 7, 1985, the Kecks signed a short form real estate contract with seller, agreeing to purchase the property for $94,500.00. Seller signed the contract on June 9th. The Keck contract states that seller would finance $76,500.00 for fifteen years at eleven percent interest.

Slemboski testified, by way of deposition, that he contacted Norton (seller's attorney) a few days after his (Slemboski's) meeting with Mrs. Jensen, and that Norton informed him that "the deal was off." On June 10th, Slemboski informed Mrs. Jensen that seller was not going to sell the property to buyers.

Mrs. Jensen testified that later that afternoon, she telephoned Fotovich, who confirmed that seller was not going to sell to buyers, and that the property had already been sold to another buyer. Mrs. Jensen inquired of Fotovich as to the $500.00 earnest money and Fotovich stated that it was up to seller to decide whether to refund the earnest money. Mrs. Jensen further testified that she told Fotovich that buyers still wanted the property and that if seller would not sell it to them, they wanted a refund of the earnest money.

On June 13, 1985, Fotovich delivered to buyers a refund of the earnest money and a release. Buyers refused to sign the release, but they did accept the earnest money. Fotovich testified that after he delivered the earnest money to buyers, he received a letter, return receipt requested, dated June 13, 1985, from buyers, stating that buyers were ready, willing, and able to finalize the May 14th real estate contract.

Buyers filed their petition for specific performance of the May 14th contract and for damages for breach of contract on June 19, 1985, stating that buyers were ready, willing, and able to fulfill their part of the May 14th contract. Mrs. Jensen testified that she had a check for $24,500.00 in her purse at the day of trial.

Seller presented no evidence at trial. The court entered its judgment for seller on both counts of buyers' petition on August 12, 1985. The court made no findings of fact or conclusions of law. Following the overruling of post-trial motions, buyers filed their notice of appeal.

Buyers raise five points on appeal, which may be stated more clearly as one point with four subpoints, and charge that the trial court erred in entering its judgment in favor of seller on both counts of buyers' petition because the judgment is not supported by substantial evidence and erroneously declares and applies the law in that (a) the evidence established that the May 14th real estate contract was subject to specific performance because it was enforceable as it contained all the essential terms and there was a meeting of the minds; (b) the evidence established that buyers were entitled to specific performance in that either buyers made a timely tender of performance or timely tender was excused by seller's conduct; (c) the evidence established that buyers were entitled to specific performance in that buyers did not abandon the contract by accepting a refund of the earnest money because seller had repudiated the contract; and (d) the evidence established seller breached the May 14th contract and buyers were entitled to damages established by the evidence.

Since this was a court-tried case, this court must affirm the trial court's judgment if it is supported by substantial evidence, is not against the weight of the evidence, and is not based upon an erroneous declaration or application of the law. Rule 73.01, *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

In reviewing a judgment wherein the trial court made no findings of fact, this court must assume that all fact issues were found in accordance with the result reached. Rule 73.01(a)(2); and *Webster v. Empiregas Inc. of Camdenton,* 648 S.W.2d 198, 200 (Mo.App.1983). This court must also, in reviewing the evidence, give due regard to the superior opportunity of the trial court to judge the credibility of the witnesses. *Insurance Company of the State of Pennsylvania v. West Plains Air, Inc.,* 637 S.W.2d 444, 446 (Mo.App.1982).

Buyers' points of error are postulated on the possibility that the trial court could have reached its decision a number of ways. Given that the trial court did not issue findings of fact and conclusions of law, this court cannot state with certainty the reasons guiding the trial court to its decision. Nevertheless, this court must affirm the trial court's judgment if it is correct under any reasonable theory. *Kershner v. Hilt Truck Line, Inc.,* 637 S.W.2d 769, 771 (Mo.App.1982). Therefore, this court need not address each point of error if the judgment can be affirmed on one of the possible theories.

For the reasons stated *infra,* this court holds that the trial court did not err in denying buyers specific performance of the May 14th contract and damages for breach of contract because buyers failed to timely tender performance and such tender was not excused or waived by seller's conduct.

Assuming, but not deciding, that the May 14th contract was a complete and binding contract containing all essential terms, and was subject to specific performance, the party seeking specific performance must himself tender everything that is due on his part. *Lancaster v. Simmons,* 621 S.W.2d 935, 942 (Mo.App.1981). Buyers argue that they made a timely offer to tender performance because the evidence established that at the June 3rd meeting, Mr. Jensen informed seller that he had with him the $24,500.00 down payment. However, there was no evidence that Mr. or Mrs. Jensen offered the money to either seller or Fotovich.

This court must assume that the trial court found that buyers did not tender performance at the June 3rd meeting. There is substantial evidence to support this finding.

Buyers next contend that tender of performance was excused by seller's conduct. Buyers argue that the long form real estate contract, the seller carry back rider, the tax reassessment disclosure form, and the deed of trust contained terms which were not included in the May 14th contract and therefore seller's insistence that buyers execute those documents excused the necessity that buyers tender performance.

Buyers correctly note that the law does not require tender if such would be a useless and idle ceremony. *McDermott v. Burpo,* 663 S.W.2d 256, 262 (Mo. App.1983), and *Stringer v. Reed,* 544 S.W.2d 69, 77 (Mo.App.1976). However, tender is excused only if seller's demands were unwarranted. *See* 81 C.J.S. *Specific Performance* § 116 (1977).

The long form real estate contract contained the following additional terms not contained in the short form contract: a provision for the pro-rating of taxes on the property for the year in which the sale would be completed; a provision for the delivery by seller to buyers of a merchantable fee simple title and a general warranty deed to the property; a provision for the repair of damage to the property with each party being responsible for various kinds and amounts of damage; and a provision stating the buyers' earnest money will be forfeited if seller complies with contract but buyers do not.

The determination of whether these additional terms were unwarranted is a question of fact. This court must assume that the trial court found that these additional terms were not unwarranted. Such finding is supported by substantial evidence as all of the foregoing provisions may inure to the benefit of either seller or buyers. A finding that these additional terms were not unwarranted was not erroneous.

The seller carryback rider contained the following additional terms: a provision that

payment upon the mortgage note shall include principal and interest only, and that buyers agree to furnish seller annual receipts showing payment of real estate taxes and hazard insurance; a provision that buyers agree to furnish mortgagees title insurance policy in amount of note; a provision that the note shall contain a standard "due on sale" clause; a provision for the acceleration of the note should buyers become bankrupt; and a provision stating that the parties would execute a note and deed of trust in a form previously approved by the parties.

Again, this court must assume that the trial court found that these additional terms were not unwarranted. Examining these provisions one by one, this court agrees with the trial court.

The first provision, dealing with tax and insurance receipts, is for the benefit of seller. However, it would be of no additional burden to buyers who would be responsible for the payment of taxes and insurance anyway. Since seller would be financing the purchase of the property and would have an interest in the property, it would be reasonable and, in fact, wise for seller to protect that interest. By providing seller with receipts showing payment of the items, seller could insure that the property would not become subject to a forced sale to satisfy unpaid taxes or that the property would be covered in the event it was damaged or destroyed by hazard. Buyers would be required to cover such costs if they had financed the purchase through a bank or mortgage company. Such a demand by seller is not unwarranted and the trial court did not err in so holding.

The next provision provides that buyers will furnish mortgagee (seller) with title insurance in the amount of the note. This provision directly conflicts with the short form contract which states that seller is to furnish title insurance. Even though this provision is conflicting, the question remains: Is the demand unwarranted so that it serves as a basis to excuse the necessity of tender? This court assumes the trial

court found that it was not so unwarranted as to excuse tender, and this court agrees.

During direct examination of Fotovich, buyers' attorney asked the witness what would be the additional cost to buyers if they were to provide title insurance. Fotovich responded that it would "probably [be] in the neighborhood of $50." Buyers will not be heard to complain that the difference of $50.00 would excuse tender in a $75,000.00 real estate transaction. The additional burden to buyers is de minimus. Seller's insistence on the condition is not so unwarranted as to excuse tender.

The next provision provides that the note contain a "due on sale" clause. Again, this is a provision which protects sellers interest. Should buyers later sell the real estate, the note would be accelerated and the entire amount would become due. This provision prevents buyers from selling the property and requiring or allowing the new buyer to assume the note.

This court assumes the trial court found this provision was not unwarranted and this court agrees.

The next provision, like the foregoing, provides for the acceleration of the note but in the event buyers become bankrupt. This, too, protects the seller's interest and would enable her to file a creditor's claim with the bankruptcy court for the remaining balance of the note. This provision places no additional burden upon buyers as they would eventually be liable for the entire amount of the note. It was not erroneous for the trial court to hold that this provision is not unwarranted.

Finally, the document contains a provision that the parties agree to execute a note and a deed of trust in a form previously approved by the parties. This provision is for the benefit of both parties as both were aware that such documents would need to be executed and the provision insures that the parties will agree to such documents before execution. The trial court did not err in finding that such provision was not unwarranted.

The next document, the tax reassessment disclosure, merely stated that the parties were aware that the state of Missouri is in the process of reassessing real estate tax-

es, and that the parties agree to make any necessary adjustments in the payment of real estate taxes. This document benefits both parties and the trial court did not err in finding that it was not unwarranted.

Lastly, buyers complain that tender was excused because of seller's insistence on the execution of a deed of trust which designated seller's attorney as trustee. Buyers produced no evidence that seller's attorney would not be able to competently perform the duties of trustee. Buyers merely object because the trustee would be seller's attorney. Such an objection is not valid. The trial court did not err in finding that the document was not unwarranted.

This court holds that seller's demands were not unwarranted and buyers were not excused from tendering performance.

Buyers next argue that although tender was not offered on or before June 3rd, there was a timely tender of performance on June 13th because seller's agent had agreed to extend the date of closing to June 14th.

The evidence was conflicting as to whether Fotovich agreed to extend the date of closing. This court must assume that the trial court found that Fotovich did not agree to extend the closing, and this court must give deference to the trial court's decision. *Snadon v. Gayer*, 566 S.W.2d 483, 491 (Mo.App.1978).

This court holds that the trial court did not err in denying buyers specific performance and damages for breach of contract because the parties were bound to the May 14th contract, seller's subsequent demands were not unwarranted, there was no extension of the closing date, buyers were required to tender performance on or before June 3rd, performance was not tendered on or before June 3rd, therefore, buyers were not entitled to specific performance or damages for breach of contract.

Judgment affirmed.

All concur.