**Mr. and Mrs. William THOMAS, and Lloyd Downard and Sandra Downard, Appellants,**

v.

**ESTATE OF Edna DUCAT, Deceased, the Exchange National Bank, Personal Representative, Alfred Sanders, Lorraine Powell, and Daniel Bates, Respondents.**

**No. WD 40561.**

Missouri Court of Appeals,
Western District.

April 25, 1989.

Carrie Francke, Powell, Seitz and Francke, Columbia, for appellants.

John H. Lake, Goller, Lake and Kuebler, Jefferson City, for respondents.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

Plaintiffs-appellants, the owners of farm property, brought suit against defendants-respondents as owners of other land nearby, claiming damages and for injunctive relief on account of the alleged obstruction by defendants of a natural waterway. The trial judge heard the cause without a jury and found for the defendants.

On this appeal, plaintiffs contend the judgment was in error because it was against the weight of the evidence and because it was the product of a misapplication of the law. The determinative question before the trial court, and on this appeal, is whether the drainage area in issue constituted a natural watercourse which defendants could not lawfully obstruct. We conclude it was not and therefore affirm the judgment.

Three farm tracts are involved in the case, the land of defendant Ducat being the most easterly. The Ducat farm is bordered on the west by the Thomas farm and that land, in turn, is adjoined on the west by the Downard property. The Missouri River runs along the south line of all three properties which are protected from the river by a levee. North of the levee is an area of low lying land, referred to as a slough, running parallel to the river. The evidence was undisputed that at times, water would collect in the slough inundating some 28 acres of the Thomas property and five acres of the Downard land.

In 1981, defendants had the brush and trees cleared from along the sides of the slough area on their property and filled in the low ground. Plaintiffs' suit contended that this work obstructed the flow of water in the slough from west to east and therefore caused water to accumulate in the portions of the slough lying on plaintiffs' land. It was an essential component of plaintiffs' claim that waters in the slough would ultimately flow, prior to the blockage, into Reveaux Creek to the east and then into the Missouri River. According to plaintiffs, this constituted the slough a natural watercourse.

We first note that the trial court made no findings of fact and assigned no reasons for the entry of judgment for defendants. In reviewing a judgment in such circumstances where there are no findings, the appellate court must affirm the judgment if it is correct under any reasonable theory. *Kershner v. Hilt Truck Line, Inc.*, 637 S.W.2d 769, 771 (Mo.App.1982). Defendants argue that the judgment may be affirmed on the ground that evidence in the case supports the conclusion that the slough is not a natural watercourse and that the water on their lands, of which plaintiffs complain, is merely surface water.

It is a familiar and well recognized principle that surface water may be treated as a common enemy and no liability attaches where the flow of surface water is obstructed so long as it is done reasonably and not in a reckless or negligent manner. *Happy v. Kenton*, 362 Mo. 1156, 1160, 247 S.W.2d 698, 700 (1952). If, as defendants assert, the evidence in the case entitled a fact finder to conclude that the slough was not a natural watercourse and the water cast upon plaintiffs' land in the low lying

areas was surface water, then defendants are not liable for any loss of tillable ground on plaintiffs' farms. Such would be a reasonable theory upon which to affirm the judgment. Inquiry therefore turns first to examination of the authorities defining natural watercourses and surface water drainage and finally to a review of the evidence in the case which would support the conclusion that water in the slough is surface water drainage.

■ A natural watercourse, which may not be obstructed without liability for ensuing damages to others, is defined as a stream usually flowing in a particular direction, though it need not flow continually, in a definite channel having a bed, sides or banks and usually discharging itself into some other body of water. It must be something more than mere surface drainage and does not include water flowing in the hollows or ravines in the land which is mere surface water from rain or melted snow and is discharged through them from a higher to a lower level but which at other times are destitute of water. *Happy v. Kenton*, 362 Mo. at 1160, 247 S.W.2d at 701.

In *Prichard v. Hink*, 574 S.W.2d 30, 33 (Mo.App.1978), the court observed that a watercourse is more than drainage of surface water and that sloughs are not considered as watercourses when they merely receive water which has escaped from a nearby stream or which accumulates from backup water or surface water runoff. *Borgmann v. Florissant Dev. Co.*, 515 S.W.2d 189, 195 (Mo.App.1974), distinguishes watercourse from a "natural surface water channel or drainway." According to *Borgmann*, a surface water drainway need not have banks or a bed but relies on the topographical features of the land itself for the channel within which the surface water is contained.

The bare obstruction of the flow of surface water by a lower owner has not been found to be an occasion for liability even though the effect upon the upper landowner would be highly predictable, nor have the courts inquired into the reasonableness of the lower owner's conduct. *M.H. Siegfried Real Estate v. City of Independence*, 649 S.W.2d 893, 896–97 (Mo. banc 1983). Not since the adoption of the common enemy doctrine in *Abbott v. Kansas City, St. J. & C.B. R.R.*, 83 Mo. 271 (1884), has a Missouri case sustained the imposition of liability for impeding the flow of surface water when no water is brought upon the plaintiff's land which would not otherwise have flowed there. *M.H. Siegfried Real Estate*, 649 S.W.2d at 897.

■ The next question for consideration is whether, under the guide of the authorities reviewed above, the evidence presented to the trial court in this case was sufficient to support a finding that the slough was not a natural watercourse. For this purpose, all evidence favorable to this result is accepted as true, with all reasonable inferences to be drawn from it and all contradictory evidence is disregarded. *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 519 (Mo.App.1985).

Reviewed in the light most favorable to defendants and consistent also with the contention that the slough area was a containment or passage for surface water drainage, the evidence may be summarized as follows.

Witness Irvin Ewing testified that the slough on the Thomas property was about 30 feet wide and 5 feet deep and was a drainage ditch. Witness William Temmen described the slough as a natural lake which could not drain out and would disappear by seepage or evaporation. Witness Roger Dickson indicated the slough to be a low area with two particular spots that would pocket water. He stated that as early as 1966, he had observed water standing in the slough on the Thomas property.

Two witnesses, Donald Smith and Larry Brinkley, testified that the land in the area of the slough on defendants' property was at a higher elevation than the adjoining Thomas land and that water never flowed from the slough to the east but drained to

822

the north and south. Agricultural engineering specialist Hubert Krautmann testified that he did not think there were any drainage channels on property east of defendants through which water could flow to the river and if there were, silting would soon obstruct them.

From the evidence reviewed above, the trial court was entitled to find that the slough was not a natural watercourse. It existed mostly on plaintiffs' land in varying depths and widths, it was filled only with surface water and it had no definite outlet to any *running* stream of water. The defendants' property, being higher than that of plaintiff Thomas, could not have served to drain off the slough. The water which accumulated in the slough on plaintiffs' land was not backflow from defendants' property, but was a collection of surface water draining off of plaintiffs' ground. It was water which would have flowed on plaintiffs' land regardless of the condition of the slough on defendants' farm.

Under the common enemy doctrine, every man is entitled to dam against surface water to ward it off his land even if, in so doing, he casts the water back upon his neighbor. *Kirkham v. Wright,* 760 S.W.2d 474, 484 (Mo.App.1988); *Schifferdecker v. Willis,* 621 S.W.2d 65, 67 (Mo.App.1981). Because the slough in this case was not a natural watercourse, defendants incurred no liability when the slough was filled even though the consequence was to cause more surface water to accumulate on plaintiffs' land. A viable theory, consistent with the evidence supports the result reached by the trial court.

The judgment is affirmed.

All concur.